```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
JAMES CROAK,                        :
                                    :
                                    :  15 Civ. 7201 (JSR)
         Plaintiff,                 :
                                    :  OPINION AND ORDER
         -v-                        :
                                    :
SAATCHI & SAATCHI, NORTH AMERICA, INC.;
TOYOTA MOTOR SALES, U.S.A., INC.,
                                    :
         Defendants.                :
------------------------------------x
```

JED S. RAKOFF, U.S.D.J.

By bottom-line Order dated December 14, 2015, this Court granted the motion of defendant Saatchi & Saatchi, North America, Inc. ("Saatchi & Saatchi") and defendant Toyota Motor Sales, U.S.A., Inc. ("Toyota") to dismiss plaintiff's Complaint alleging that defendants' media campaign featuring an oversized, pink stuffed animal perched atop a Toyota RAV4 infringed plaintiff's copyright in a strikingly kinetic piece of art featuring a winged, taxidermied horse bursting through the shredded roof of a car. This Opinion explains the reasons for that ruling and directs the entry of final judgment.

On a motion to dismiss, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the non-moving party. See Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008). According to the Complaint, plaintiff James Croak is a world-renowned visual artist and the sole author and copyright holder of the sculpture (the "Sculpture") at issue in this action.

1

Complaint ("Compl.") ¶¶ 6, 12, ECF No. 1. The Sculpture, entitled "Pegasus, Some Loves Hurt More Than Others," is a mixed-media, life-sized work that was first exhibited in 1983 at the Otis-Parsons Art Gallery in Los Angeles, California. Id. ¶¶ 1, 13. The Sculpture depicts a winged, taxidermied horse that appears to be in the process of breaking through the roof of a sleek lowrider, as if about to take flight.[1] According to the Complaint, the Sculpture is "world famous" and has been widely used, including in a poster for the 1984 Olympic Arts Festival. Id. ¶ 14; Compl., Ex. 2. Plaintiff attaches the following depiction of the Sculpture to his Complaint:



---

[1] The Complaint does not describe the Sculpture at all beyond identifying it as a "mixed-media, life-sized work." Compl. ¶ 13. However, plaintiff's brief opposing the instant motion repeatedly describes the horse in the Sculpture as "stuffed." Pl.'s Mem. of Law in Opp. to Defs.' Mot. to Dismiss the Compl. at 1, ECF No. 1.

2

Compl., Ex. 1.

In 2014, defendant Toyota hired defendant Saatchi & Saatchi, an international advertising agency, to create an advertising and media campaign to promote the sale of Toyota vehicles. Compl. ¶¶ 8, 16. As part of that campaign, Saatchi & Saatchi developed and produced a television commercial that prominently features a massive, pink stuffed animal -- specifically, a hybrid of a unicorn and Pegasus -- strapped to the roof of a Toyota RAV4. Id. ¶ 17; Compl., Ex. 4. The commercial portrays a father who, while driving his family through a leafy suburb, narrates the scene, via voice-over, as follows:

> This is Lady. She's a unicorn. And a Pegasus. And why is she strapped to the roof of my RAV4? Well if you have kids, then you know why. Now the real question. Where's this going in the house? The RAV4. Toyota. Let's go places.

Decl. of Andrew H. Bart dated Oct. 30, 2015, Ex. A, ECF No. 16-1.[2]

The commercial includes images of the family smiling and laughing with one another, as well as a man on the sidewalk who flashes the driver a knowing thumbs-up, which the driver acknowledges with a nod and wave. Upbeat jazz plays in the

---

[2] Though plaintiff only attaches a still frame of the allegedly infringing commercial to his Complaint, the complete commercial submitted by defendants is properly before the Court on this motion to dismiss. See Dunn v. Sederakis, 602 F. App'x 33, 34 n.1 (2d Cir. 2015) ("On a motion to dismiss, a court may consider both: (a) documents incorporated by reference into the complaint and (b) unincorporated documents that are integral to the complaint and upon which the complaint heavily relies.").

background. As the voice-over concludes, the slogan "Let's make today fun." appears above the car.

Toyota also used an image taken from the commercial to create a print advertisement. See Compl. ¶ 18. Toward the top of the print advertisement, the same slogan ("Let's make today fun.") appears in white letters. Plaintiff attaches the following reproduction of the print advertisement to his Complaint:



Compl., Ex. 5.

4

In addition, Toyota created a display featuring the stuffed animal at the 2015 Chicago Auto Show, see Compl. ¶ 19, a photograph of which plaintiff attaches to his Complaint:



Compl., Ex. 6.

On September 11, 2015, plaintiff filed this action, bringing one claim of copyright infringement under the Copyright Act of 1976 against both defendants, and one claim of "vicarious and/or contributory copyright infringement" against Toyota.

In the absence of direct evidence of copying, copyright infringement requires showing "(a) that the defendant had access to the copyrighted work and (b) the substantial similarity of protectible material in the two works." Kregos v. Associated Press, 3 F.3d 656, 662 (2d Cir. 1993). Defendants do not dispute access on this motion, instead moving for dismissal on the ground that the allegedly infringing works are not "substantially similar" to plaintiff's Sculpture as a matter of law.

"The test for infringement of a copyright is of necessity vague." Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487, 489 (2d Cir. 1960). Works are substantially similar if an "ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same." Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 111 (2d Cir. 2001) (internal quotation marks omitted). In applying the test, courts ask whether "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work," Knitwaves, Inc. v. Lollytogs Ltd., 71 F.3d 996, 1001 (2d Cir. 1995) (internal quotation marks omitted), and "compar[e] the contested design's total concept and overall feel with that of the allegedly infringed work . . . as instructed by our good eyes and common sense," Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 66 (2d Cir. 2010) (internal quotation marks omitted). "[I]n the end, [the] inquiry necessarily focuses on whether the alleged infringer has misappropriated the original way in which the author has 'selected, coordinated, and arranged' the elements of his or her work." Peter F. Gaito Architecture, 602 F.3d at 66 (internal quotation marks omitted).

Though often a fact-intensive question, the Second Circuit has "repeatedly recognized that, in certain circumstances, it is entirely appropriate for a district court to resolve [substantial similarity] as a matter of law, 'either because the similarity between two works concerns only non-copyrightable elements of the

6

plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar.'" Id. at 63 (quoting Warner Bros. Inc. v. Am. Broad. Cos., 720 F.2d 231, 240 (2d Cir. 1983)). Indeed, "[w]hen a court is called upon to consider whether the works are substantially similar, no discovery or fact-finding is typically necessary, because what is required is only a visual comparison of the works." Id. at 64 (internal quotation marks omitted).

Before embarking on the substantial similarity analysis, it is critical to bear in mind what does not amount to infringement under the Copyright Act. Specifically, because ideas are not protectible under the Copyright Act, see 17 U.S.C. § 102(b), "the similarity between two works must concern the expression of ideas, not the ideas themselves." Peter F. Gaito Architecture, 602 F.3d at 67 ("This principle, known as the 'idea/expression dichotomy,' 'assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work.'" (quoting Feist Publ'ns., Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 349-50 (1991))). Without a doubt, "[t]he problem of defining the boundaries of 'idea' can be as vexing as any other aspect of substantial similarity," as ideas can be defined at varying levels of generality. 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.03[B][2]. But there can be no question that

7

plaintiff does not have a monopoly on all depictions of a Pegasus,[3] even those juxtaposed with the roof of an automobile, no matter the form in which such juxtaposition is accomplished or the differences in the artists' creative choices and the resulting aesthetic appeal of each work.[4] As the Second Circuit explained in a case in which an

---

[3] Croak, of course, is not the first artist to have been inspired by the Pegasus, one of the most oft-invoked beasts of Greek mythology. See Thomas Bulfinch, Bulfinch's Mythology 133 (Walking Lion Press 2006) (1855) ("Pegasus, being the horse of the Muses, has always been at the service of the poets."). Shakespeare, for one, preceded him in Henry IV, Part I, when he compared Prince Harry taking his saddle to "an angel dropped down from the clouds, To turn and wind a fiery Pegasus, And witch the world with noble horsemanship." William Shakespeare, The First Part of King Henry the Fourth act 4, sc. 1. Several centuries later, Longfellow penned Pegasus in Pound, an ode to the Pegasus that appeared in the poet's 1849 collection of poems. Henry Wadsworth Longfellow, Pegasus in Pound, in The Seaside and the Fireside (1849) ("Then, with nostrils wide distended, Breaking from his iron chain, And unfolding far his pinions, To those stars he soared again."). But given that Pegasus was depicted on Protocorinthian pottery dating back to the 7th Century B.C.E., both Shakespeare and Longfellow may be considered latecomers as well. See Betsey A. Robinson, Histories of Peirene 35 (2011). Conversely, given modern genetic synthesis, it may only be a matter of time before the Bronx Zoo displays a live example.

[4] Plaintiff's counsel conceded as much at oral argument on the motion to dismiss, where the following colloquy took place:

> THE COURT:  Let's assume for the sake of argument that someone at Toyota goes to an art show and sees this or sees a picture of it and says, That's a great idea, a Pegasus on a vehicle. We can . . . produce an ad with a totally different feel. We're going to not have a bloody Pegasus straining to disassociate itself; we're going to take a sort of fluffy kind of kid-friendly Pegasus and we'll even add a little unicorn because you know how kids love unicorns. And we'll put it on one of our brand-new vehicles to convey the idea of fun.
>
> MR. KLEINMAN:  Sure.

8

artist was alleged to have infringed a copyright in a photograph of a couple holding eight puppies on a bench, "[i]t is not . . . the idea of a couple with eight small puppies seated on a bench that is protected, but rather [plaintiff's] expression of this idea -- as caught in the placement, in the particular light, and in the expressions of the subjects -- that gives the photograph its charming and unique character, that is to say, makes it original and copyrightable."[5] Rogers v. Koons, 960 F.2d 301, 308 (2d Cir. 1992); see also Arden v. Columbia Pictures Indus., Inc., 908 F. Supp. 1248, 1259 (S.D.N.Y. 1995) ("Because the copyright law only protects the expression of ideas, rather than ideas themselves, it is clear that the idea of a repeating day, even if first conceived by plaintiff, is not protectible.").

If plaintiff's infringement claim is to be viable, then, it must be plaintiff's expression of his idea -- including through the selection and arrangement of the elements of his work -- that has been misappropriated by defendants. Focusing here on such

---

> THE COURT: So the fact that they took the idea would not make them copyright infringers, would it?
>
> MR. KLEINMAN: No, certainly not. But it's the arrangement and the positioning and selection of those two objects. . . .

Transcript dated Dec. 10, 2015, at 11-12 (emphasis added).

[5] In Rogers, the alleged infringer (the artist Jeff Koons) employed the "identical expression of the idea that [plaintiff] created" and was thus held to have infringed. Rogers, 960 F.2d at 308. But "had [Koons] simply used the idea presented by the photo, there would not have been infringing copying." Id.

9

expression, there is almost nothing similar between plaintiff's Sculpture, on the one hand, and defendants' allegedly infringing works, on the other. Indeed, the disparities between the works in terms of their authors' creative choices and their total concept and overall feel overwhelm any superficial similarities.

Beginning with a comparison of the "Pegasus" component of the works, plaintiff employed the stuffed body of what appears to be an actual horse with wings affixed to it to create the Sculpture. Plaintiff's Pegasus is strikingly realistic and life-like. In defendants' works, by contrast, the Pegasus is a pink, smiling, oversized stuffed animal. In the allegedly infringing commercial, she is named "Lady." Lady deviates from an actual horse (or a life-like Pegasus, for that matter) in virtually all respects, including appearance and posture. Defendants' Pegasus is not remotely realistic or life-like. It appears to be a child's toy because it <u>is</u> a child's toy.

The vehicles in the works are also highly dissimilar. The Sculpture features a vintage lowrider,[6] the back half of which is bright red and the front half of which is blue. It exudes cool. The

---

[6] Plaintiff's use of a lowrider invokes a particular subculture. <u>See</u> Sophia Kercher, <u>Lowriding Culture Goes Global</u>, N.Y. Times, Dec. 4, 2015, at ST12, http://www.nytimes.com/2015/12/06/fashion/lowriding-culture-goes-global.html ("Lowriding, rooted in the Mexican-American subculture, emerged in the '40s and '50s, when car customization took off after World War II, and it hasn't slowed since. It is common for lowriders to have hydraulics that make the cars gyrate and dance, plush velvet upholstery and murals that often reflect images from Mexican culture . . . .").

10

RAV4 in defendants' works by contrast is a modern, family-friendly SUV in a glossy blue. Aside from the fact that both vehicles employ a shade of blue and that both the lowrider in the Sculpture and the RAV4 in the print advertisement are presented to viewers at an angle, there is virtually nothing similar about the vehicles in the works. No one could reasonably view them as sharing an aesthetic appeal.

Plaintiff complains that comparing and contrasting these elements of the works in isolation obscures the "glaringly obvious similarit[y]" that the works share of a "winged-horse and [] its arrangement/staging on top of an automobile." Pl.'s Mem. of Law in Opp. to Defs.' Mot. to Dismiss the Compl. ("Pl.'s Opp.") at 13, ECF No. 18. In plaintiff's telling, "the animal figure atop [each] car . . . is staged and presented to the viewer in the exact same manner." Id. at 14. If that were correct, the outcome on defendants' motion might have been different. The problem for plaintiff is that while it is true that the (very different) Pegasus-like figures are juxtaposed with the roofs of the (very different) vehicles in each work, the similarities in presentation end there. The Pegasus in the Sculpture is presented as bursting forcefully through the roof of a now severely damaged car, as it unfurls its body in preparation for flight. It radiates exertion, dynamism, and sheer power. In contrast, defendants' Pegasus is strapped to the intact roof of an SUV and carries no suggestion of life, movement, or vitality. Plaintiff asserts that the stuffed animal's pose "strongly suggests

11

the same freedom of movement that is depicted in Plaintiff's Pegasus Sculpture" and that the "overall look and feel of the [print] Ad instantly gives the viewer the surreal impression that the horse is in flight and transporting/guiding the RAV4." Id. at 16. While this is a creative characterization -- which conveniently disregards the fact that the stuffed animal is strapped to the car[7] -- it is not an accurate one and thus not a relevant one. Peter F. Gaito Architecture, 602 F.3d at 64 ("In copyright infringement actions, the works themselves supersede and control contrary descriptions of them, including any contrary allegations, conclusions or descriptions of the works contained in the pleadings." (internal quotation marks and citations omitted)). No reasonable jury would share plaintiff's self-serving view.

The settings of the works are strikingly different as well. The smoke billowing in the background of the Sculpture is in stark contrast to the sunny, suburban setting that defendants employ in the allegedly infringing advertisements. And while the indoor display at the Chicago Auto Show obviously lacks the idealized

---

[7] Plaintiff dismisses the fact that the stuffed animal is tethered to the RAV4 in the print advertisement as "hardly perceptible." Pl.'s Opp. at 16. To the contrary, the straps -- while not the focus of the advertisement -- would be immediately perceptible to anyone pausing over the advertisement even briefly. In addition, the allegedly infringing commercial explicitly refers to the stuffed animal being "strapped" to the roof of the narrator's RAV4. And while the stuffed animal does not appear strapped to the roof of the car in the Chicago Auto Show display, the staging of the Pegasus and the car in that setting remains radically different from that of the Sculpture.

suburban context of defendants' commercial and print advertisement, its surroundings also share nothing in common with the Sculpture. Plaintiff objects that the Sculpture has been staged in various settings -- not all of which are ominous and smoke-filled -- but that assertion is outside the four corners of the Complaint and the Court has no basis on which to infer that the Sculpture was presented in settings similar to that of defendants' works.[8]

In a strained effort to make out a plausible case for substantial similarity, plaintiff manufactures commonalities by noting, for example, that both animals in the relevant works are "stuffed," that both are juxtaposed with hoods of cars that "contrast[] sharply with [their] soft fur," and that both have wings that "are different colors than the rest of their respective bodies." Pl.'s Opp. at 14. As noted, the test for substantial similarity is whether an "ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same." Yurman, 262 F.3d at 111. In drumming up such "similarities" -- several of which amount to mere wordplay -- plaintiff is seeking to turn that test on its head,

---

[8] Plaintiff pleads that, in addition to those uses specifically cited in the Complaint, the Sculpture has been the subject of "several hundred other uses and mentions." Compl. ¶ 14. But plaintiff does not plead that the Sculpture lacks the billowing smoke in any of these iterations, and the Court has no basis to infer as much. In each of the three depictions of the Sculpture that plaintiff attaches to his Complaint, smoke billows behind the Sculpture in an indistinguishable way. In any case, even if the Court excluded the works' surroundings from the substantial similarity analysis, it would reach the same result.

13

asking the Court to focus on a laundry list of technical similarities (as opposed to disparities) that an ordinary observer would be disposed to overlook. But technical similarities that have little to no effect on the aesthetic appeal of a given work, and which pale in comparison to the works' disparities, are of little relevance to the analysis. See Dean v. Cameron, 53 F. Supp. 3d 641, 650 (S.D.N.Y. 2014) ("[T]he differences between each of [plaintiff's] works and [the allegedly infringing work] overwhelm any superficial similarity."); Segal v. Paramount Pictures, 841 F. Supp. 146, 149 (E.D. Pa. 1993) ("[T]he existence of some common features in the face of overwhelming differences between the works is insufficient to show substantial similarity."). Indeed, the Pegasus in the Sculpture, while necessarily made of stuffing, is plainly designed to give the "feel" of a living animal, whereas the stuffed quality of the animal in defendants' advertisements is central to its depiction and message as a child's toy.

Finally, no reasonable jury could find that the "total concept and overall feel" of plaintiff's Sculpture and the allegedly infringing works are substantially similar. Defendants' works -- featuring a friendly-looking, oversized stuffed animal -- evoke feelings of warmth, family, and fun. The mood of the works is light-hearted and playful. These associations are explicit in defendants' commercial and -- though they must be considered standing alone[9] --

---

[9] Plaintiff is correct that defendants cannot rely on the allegedly infringing commercial to supply a frame of reference for the other

implicit in the print advertisement and the Chicago Auto Show display. This "total concept and overall feel" is dramatically different from that of the Sculpture, which, on the view that plaintiff favors, is a "celebration of the intrepid spirit, and particularly the adventurous energy that is enabled by the modern automobile." Pl.'s Opp. at 2. The Sculpture evokes raw power, independence, and escape. It depicts the supernatural by animating a mythological creature, while defendants' works are situated in the real world. To be sure, different observers could reasonably interpret the Sculpture in different ways. Some might see violence where others perceive spirit. That is the nature of art. But no reasonable juror would find the Sculpture light-hearted in nature, evoking family and children.

Plaintiff, as if evaluating an entirely different set of works than those before the Court, argues that "no ordinary observer could reasonably conclude that the overall look and feel of [defendants' print advertisement] conveys feelings of 'togetherness, safety, and comfort,'" and that, rather, "it is far more plausible that an ordinary observer could conclude that this advertisement conveys the same feelings of 'escape' and 'the force of individual spirit' that Defendants contend are evoked by Plaintiff's Sculpture." Id. at 17.

---

allegedly infringing works, given that it cannot be assumed that viewers of defendants' print advertisement or the Chicago Auto Show display were familiar with defendants' commercial. The Court has not conflated defendants' works in its analysis, but rather found that each is not substantially similar to the Sculpture on its own terms and as a matter of law.

...

Similarly, plaintiff submits that defendants' works could "elicit the same 'desire to break free' Defendants' [sic] claim is evoked by plaintiff's Sculpture." Id. at 18. Again, that plaintiff declares it does not make it so. Conclusory rhetoric aside, no reasonable jury would regard the total concept and overall feel of the works as substantially similar to one another.

For that reason, and because an ordinary observer would not regard the "aesthetic appeal" of the works at issue as the same, Yurman, 262 F.3d at 111, or perceive defendants as having "misappropriated the original way in which [plaintiff] 'selected, coordinated, and arranged' the elements of his . . . work," Peter F. Gaito Architecture, 602 F.3d at 66, plaintiff's copyright infringement claim fails as a matter of law. Since "there can be no contributory infringement absent actual infringement," Faulkner v. Nat'l Geographic Enters., 409 F.3d 26, 40 (2d Cir. 2005), plaintiff's vicarious and contributory infringement claims against Toyota also fail as a matter of law. See BroadVision, Inc. v. Med. Protective Co., 2010 WL 5158129, at *4 (S.D.N.Y. Nov. 23, 2010) ("A party claiming vicarious liability must establish that direct infringement occurred . . . .").

For the foregoing reasons, the Court, in its Order dated December 14, 2015, granted defendants' motion to dismiss. The Clerk of the Court is hereby directed to enter final judgment dismissing plaintiff's Complaint with prejudice and to close this case.

SO ORDERED.

```
Dated:    New York, NY
          March 31, 2016
```
_____
JED S. RAKOFF, U.S.D.J.

17